**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TAMEKA HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | ______________________ |
| | ) | |
| **HANON SYSTEMS ALABAMA CORPORATION,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Tameka Harris (hereinafter "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Hanon Systems Alabama Corporation (hereinafter "Defendant") and seeks redress for disability discrimination, failure to accommodate, and retaliation suffered in Plaintiff's capacity as an employee of Defendant. Plaintiff has been discriminated against by Defendant on account of Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and any other causes of action that can be inferred from the facts set forth herein. In support of her Complaint, Plaintiff states as follows:

## PARTIES

1. Plaintiff is a resident of Montgomery County, Alabama and is over the age of nineteen (19) years.

2. Plaintiff, for all times relevant to this action, was an "employee" of Defendant as defined under the ADA, 42 U.S.C. § 12111(4).

3. Defendant is a corporation incorporated under the laws of Delaware, with its principal place of business being in the State of Alabama. Defendant's registered agent is CT Corporation System which can be served process at 2 North Jackson Street Suite 605, Montgomery, AL 36104

4. Defendant, for all times relevant to this action, was Plaintiff's "employer" as defined under the ADA, 42 U.S.C. § 12111(5)(A), and employed more than fifteen (15) employees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and pursuant to 42 U.S.C. § 12117(a), because the action arises under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful acts took place within Macon County, Alabama, which lies within

the Eastern Division of the United States District Court for the Middle District of Alabama.

## COMPLIANCE WITH JURISDICTIONAL REQUIREMENTS

1. Plaintiff has complied with the jurisdictional requirements on to wit: that on or about September 29, 2025, Plaintiff filed a Charge of Discrimination in employment with the Equal Employment Opportunity Commission (hereinafter "EEOC").

2. On July 29, 2026, following its investigation, the EEOC issued a Letter of Determination finding reasonable cause to believe that Defendant violated the ADA. A copy of the Letter of Determination is attached as "Exhibit A".

3. On September 1, 2026, the EEOC issued Plaintiff a Notification of a Right to Sue, and Plaintiff filed this Complaint within the ninety (90) day deadline. A copy of the notification is attached as "Exhibit B".

## FACTS

4. On or about August 7, 2023, Defendant hired Plaintiff as a third-shift MRO Clerk at its manufacturing facility located at 676 Hall-bama Drive, Shorter, Alabama 36075, in Macon County (the "Facility").

5. As an MRO Clerk, Plaintiff's primary responsibility was purchasing consumables for the Facility and supporting the needs of the production floor.

6. Plaintiff's work area was located on an upper floor of the Facility that was accessible only by a staircase of approximately twenty-five (25) steps. No elevator, ramp, or lift served Plaintiff's work area, and there was no restroom on that floor.

7. Plaintiff was not required to lift heavy items in her role, because maintenance personnel retrieved heavy parts themselves.

8. In or around October 2024, Plaintiff was diagnosed with breast cancer, specifically invasive ductal carcinoma, grade 3, a high-grade, fast-growing invasive cancer, occurring together with ductal carcinoma in situ.

9. Plaintiff's treatment included chemotherapy, Herceptin therapy administered every twenty-one (21) days, surgery, radiation, and physical therapy. A port was placed in Plaintiff's chest for her treatment.

10. As a result of her cancer and its treatment, Plaintiff developed high blood pressure, diabetes, lymphedema, and neuropathy that caused her to lose feeling in her hands and feet. Her medications also caused drowsiness that affected her ability to concentrate and comprehend.

11. Plaintiff's cancer substantially limits the major bodily function of normal cell growth. Plaintiff's cancer, its treatment, and the resulting conditions described above also substantially limited, at all times relevant to this action, Plaintiff's major life activities of walking, standing, climbing stairs, lifting, bending,

concentrating, thinking, and working, as well as her endocrine, circulatory, lymphatic, and neurological functions.

12. After her diagnosis, Plaintiff continued to work while undergoing chemotherapy.

13. Because of her elevated blood sugar, Plaintiff needed to use the restroom frequently, which required her to descend and climb the twenty-five (25) steps to her work area each time.

14. In or around early February 2025, Plaintiff was admitted to the hospital after her blood sugar reached approximately nine hundred (900).

15. On or about February 5, 2025, Plaintiff began a medical leave of absence under the Family and Medical Leave Act ("FMLA") because of her cancer and related conditions.

16. Plaintiff's physicians provided medical documentation to Defendant whenever Defendant requested it.

17. Defendant approved Plaintiff's leave and continued her benefits while she was on leave.

18. On or about April 9, 2025, Plaintiff underwent a partial mastectomy of her right breast and a sentinel lymph node biopsy, during which lymph nodes were removed from under her right arm.

19. In or around May 2025, upon information and belief, Defendant extended Plaintiff's leave on the grounds that Plaintiff's FMLA leave had been exhausted. Plaintiff never received written notice from Defendant that her FMLA leave had been exhausted.

20. In or around May or June 2025, Ken Sexton ("Sexton"), a member of Defendant's Human Resources department ("HR"), called Plaintiff and stated that Defendant had her out on leave for pregnancy. Plaintiff corrected Sexton and informed him that she was on leave for breast cancer treatment.

21. In or around June 2025, after recovering from surgery, Plaintiff began radiation therapy, which required treatment for twenty (20) consecutive days and caused severe burns to her skin.

22. On Thursday, July 24, 2025, Sexton called Plaintiff and told her that she needed to return to work on Monday, July 28, 2025, and that if she did not return, Defendant would not be able to hold her job.

23. Plaintiff told Sexton that she had not been medically released to return to work, that Defendant had her physician's documentation, and that she could not obtain clearance from her physicians by Monday.

24. When Sexton asked Plaintiff to send him a text message stating that she would not report to work on Monday, Plaintiff declined and again referred him to the medical documentation in Defendant's possession.

25. On or about August 4, 2025, Plaintiff emailed Kiki Kennebrew ("Kennebrew"), Defendant's HR Assistant Manager, to ask about the status of her leave.

26. Plaintiff informed Kennebrew that she remained in active cancer treatment, that her physician had not released her to return to work, and that she expected to be released to return to work on or around December 15, 2025.

27. In the same email, Plaintiff asked Kennebrew whether, if her FMLA leave had run out, tried to engage in the interactive process by requesting a leave of absence, and inquired as to what her [Plaintiff's] options were with the Defendant.

28. On or about August 5, 2025, Kennebrew responded that Plaintiff had exhausted her 480 hours of FMLA leave, that FMLA leave and Defendant's leave of absence ran concurrently, and that there was nothing she could do.

29. After August 5, 2025, no one from Defendant contacted Plaintiff to discuss her request, her medical restrictions, her expected return date, or any possible accommodation, including additional leave or a work area on the ground floor of the Facility.

30. On August 13, 2025, nine (9) days after Plaintiff requested additional leave, Sexton left Plaintiff a voicemail stating that Defendant had to terminate her employment.

31. Defendant did not provide Plaintiff with any letter or other documentation explaining the reason for her termination.

32. Defendant ended Plaintiff's health insurance coverage on or about August 31, 2025.

33. Upon information and belief, Defendant's Team Member Handbook states that, in compliance with the ADA, Defendant's accommodations "can include modifications to work schedules, such as leave," and that "[a]pplications for additional leave from qualified employees with disabilities will be granted unless doing so would result in 'undue hardship' to the company."

34. Upon information and belief, Defendant claimed that Plaintiff's vacant position created an undue hardship on the Defendant.

35. However, During Plaintiff's six (6) months of leave, Defendant covered the duties of Plaintiff's position. Defendant has stated that its existing MRO Clerk and a supervisor covered Plaintiff's shift during her absence.

36. Furthermore, as of July 29, 2026, Defendant did not create a job posting to fill Plaintiff's position after her termination and the position remained vacant.

37. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages and benefits, loss of health insurance coverage, lost employment

opportunities, emotional distress, humiliation, mental anguish, inconvenience, and loss of enjoyment of life.

## COUNT ONE:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED, 42 U.S.C. § 12112(a)
## (DISABILITY DISCRIMINATION – DISCRIMINATORY DISCHARGE)

38. Plaintiff re-alleges and incorporates by reference paragraphs 1–43 as though fully set forth herein.

39. Plaintiff is an individual with a disability within the meaning of the ADA. Plaintiff's breast cancer and the related conditions described above are physical impairments that substantially limit one or more of her major life activities and major bodily functions, including normal cell growth. Plaintiff also has a record of such impairments, and Defendant regarded her as having such impairments.

40. Defendant knew of Plaintiff's disability. Defendant received medical documentation from Plaintiff's physicians, approved her medical leave beginning February 5, 2025, was told by Plaintiff on July 24, 2025, that she had not been medically released, and was told by Plaintiff on August 4, 2025, that she remained in active cancer treatment.

41. Plaintiff is a qualified individual within the meaning of the ADA. Plaintiff performed the MRO Clerk position from August 2023 until her medical leave,

and, with the reasonable accommodation of a finite extension of her leave until her expected medical release on or around December 15, 2025, she could have performed the essential functions of the position.

42. On August 13, 2025, Defendant terminated Plaintiff's employment because of her disability, nine (9) days after Plaintiff informed Defendant that she remained in active cancer treatment, initiated engagement in the ADA interactive process, and identified the date she expected to be released to return to work.

43. Despite this, Defendant failed/refused to engage in the interactive process and terminated Plaintiff's employment.

44. Plaintiff's request for the accommodation of a finite extension of the leave would not have been an "undue hardship" on the Defendant, within the meaning of the ADA, because Plaintiff's position continued to be vacant following Defendant's termination.

45. Defendant's actions were in violation of the ADA and were intentional and done with malice and reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

46. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer the damages set forth above, in amounts to be proven at trial.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful;

B. Order Defendant to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices;

C. Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including reinstatement or, in the alternative, front pay;

D. Award Plaintiff back pay, lost benefits, and prejudgment interest;

E. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial;

F. Award punitive damages to be determined by a jury at trial;

G. Award Plaintiff her reasonable attorney's fees, expert fees, and costs; and,

H. Grant such further relief as the Court deems necessary and proper.

## COUNT TWO:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED, 42 U.S.C. § 12112(b)(5)(A)
## (FAILURE TO ACCOMMODATE)

47. Plaintiff re-alleges and incorporates by reference paragraphs 1–43 as though fully set forth herein.

48. Plaintiff is an individual with a disability and a qualified individual within the meaning of the ADA, as set forth above.

49. On or about August 4, 2025, Plaintiff requested a reasonable accommodation when she asked Defendant whether she could take a leave of absence, and what her options were, so that she could complete her cancer treatment and return to work upon her expected medical release on or around December 15, 2025.

50. Plaintiff's request was for a finite period of leave with a specific anticipated return date. Defendant's own Team Member Handbook recognizes leave as a reasonable accommodation and provides that additional leave for qualified employees with disabilities will be granted unless doing so would result in undue hardship.

51. Defendant denied Plaintiff's request on or about August 5, 2025, and terminated her employment on August 13, 2025, without engaging in any

interactive process with Plaintiff to discuss her request, her limitations, or any alternative accommodation, including a work area on the ground floor of the Facility upon her return.

52. Granting Plaintiff's request would not have imposed an undue hardship on Defendant. Defendant had covered the duties of Plaintiff's position for approximately six (6) months through its existing MRO Clerk, a supervisor, and, upon information and belief, temporary workers; Defendant never posted the position; and, as of July 29, 2026, the position remained vacant.

53. By denying Plaintiff a reasonable accommodation and terminating her employment rather than accommodating her, Defendant discriminated against Plaintiff in violation of the ADA.

54. Defendant's actions were intentional and done with malice and reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

55. As a direct and proximate result of Defendant's failure to accommodate Plaintiff, Plaintiff has suffered and continues to suffer the damages set forth above, in amounts to be proven at trial.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful;

B. Order Defendant to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices;

C. Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including reinstatement or, in the alternative, front pay;

D. Award Plaintiff back pay, lost benefits, and prejudgment interest;

E. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial;

F. Award punitive damages to be determined by a jury at trial;

G. Award Plaintiff her reasonable attorney's fees, expert fees, and costs; and,

H. Grant such further relief as the Court deems necessary and proper.

## COUNT THREE:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED, 42 U.S.C. § 12203(a)
## (RETALIATION)

56. Plaintiff re-alleges and incorporates by reference paragraphs 1–43 as though fully set forth herein.

57. On or about August 4, 2025, Plaintiff engaged in protected activity under the ADA when she requested a reasonable accommodation for her disability in the form of additional leave until her expected medical release on or around December 15, 2025.

58. Defendant was aware of Plaintiff's protected activity. Defendant's HR Assistant Manager, Kennebrew, received Plaintiff's request and responded to it on or about August 5, 2025.

59. After Plaintiff requested an accommodation, Defendant retaliated against Plaintiff by terminating her employment on August 13, 2025, nine (9) days after her request and eight (8) days after Defendant responded to it.

60. A causal connection exists between Plaintiff's protected activity and her termination, as shown by the very close temporal proximity between Plaintiff's request and her termination, Defendant's failure to provide Plaintiff any written reason for her termination, and the lack of support for Defendant's stated reason, given that Defendant had covered the position for approximately six (6) months and never replaced her.

61. Defendant's retaliatory actions were in violation of the ADA and were intentional and done with malice and reckless indifference to Plaintiff's federally protected rights.

62. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer the damages set forth above, in amounts to be proven at trial.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful;

B. Order Defendant to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices;

C. Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including reinstatement or, in the alternative, front pay;

D. Award Plaintiff back pay, lost benefits, and prejudgment interest;

E. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from

the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial;

F. Award punitive damages to be determined by a jury at trial;

G. Award Plaintiff her reasonable attorney's fees, expert fees, and costs and,

H. Grant such further relief as the Court deems necessary and proper.

**JURY DEMAND**

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THE COMPLAINT.

*/s/ Jon-Kaden Mullen*
D. Jeremy Schatz
Jon-Kaden Mullen
*Attorneys for Plaintiff*

**OF COUNSEL:**
Virtus Law Group
2017 Morris Avenue, Ste 100
Birmingham, AL 35203
js@vlgal.com
jm@vlgal.com

**Please Serve Defendant By Certified Mail As Follows:**

**Hanon Systems Alabama Corporation**
**c/o CT Corporation System**
**2 N. Jackson Street, Suite 605**
**Montgomery, AL 36104**